IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08CR230-1 |
| | ) | |
| WARDELL JERMAINE MCCLAM, JR. | ) | |

**MEMORANDUM ORDER**

Before the court is pro se Defendant Wardell Jermaine McClam Jr.'s motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 225.) The Government has responded in opposition. (Doc. 231.) McClam has filed supplemental materials, which the court has considered as well. (Docs. 226, 228.) For the reasons set forth below, the motion for compassionate release will be denied.

**I. BACKGROUND**

On September 11, 2008, McClam pleaded guilty to one count of conspiracy to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 17; Minute Entry 09/11/2008.) On July 15, 2009, he was sentenced to 138 months' imprisonment, followed by a five-year supervised release term. (Doc. 32.) McClam's term of supervision began on March 6, 2019. (Doc. 191.) But on December 13, 2021, the United States Probation

Office filed a petition to revoke McClam's supervised release based on allegations of new criminal conduct. (Id.) After a hearing, the court found that McClam violated the terms and conditions of his supervised release, ordered that he be committed to the custody of the Bureau of Prisons for 60 months to run concurrent with his undischarged state court sentence, and re-imposed 24 months of supervision. (Doc. 201.)

Currently, McClam is incarcerated at FCI Butner, and his presumptive release date is May 19, 2026. Fed. Bureau of Prisons, Find an Inmate, at https://www.bop.gov/inmateloc. He is 45 years old and has served approximately half of his sentence.[1] Id.

McClam filed this motion for compassionate release on March 28, 2024. (Doc. 225.) In support of the motion, he contends that his life is in danger in federal custody and asks to be released so that he may care for his young son and ailing mother. (Id. at 2-4.) He has also accepted responsibility for his wrongdoing, noted his strides toward rehabilitation, and vowed that he will not re-offend. (Id. at 2-5.) Finally, he represents that he has arranged for employment and housing if he is released. (Id. at 3.) He asks that he be allowed to serve the remainder of his

---

[1] McClam was in state custody serving his related state sentence at the time of the revocation hearing in this case, with a state release date of September 7, 2024. (Doc. 219 at 11-12.) His 60-month sentence on revocation, entered August 16, 2022, was ordered to run concurrently with the undischarged term of the state sentence. (Id. at 16-17.) So, McClam has been discharging his federal revocation sentence since August 16, 2022, and was thus transferred to federal custody only recently.

2

sentence on house arrest. (Id. at 5.)

The Government opposes release. (Doc. 231.) First, it notes that McClam has not offered evidence that he is the sole available caregiver for his mother and child. (Id. at 6-10.) Second, it contends that McClam's concern for his safety is not an extraordinary and compelling reason that justifies compassionate release. (Id. at 10-11.) Finally, the Government argues that the section 3553(a) factors weigh against early release. (Id. at 11-13.)

**II. ANALYSIS**

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended section 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to section 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

3

such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the exhaustion requirement is met, a defendant must either (1) have "extraordinary and compelling reasons" for a compassionate release or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the public. Id. The defendant bears the burden of establishing that extraordinary and compelling reasons justify his release. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022). Further, while a court need not address every argument raised by a defendant, it must fully explain its decision in light of the particular circumstances of each case. United States v. Osman, No. 21-7150, 2022 WL 485183, at *2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished)[2] (citing United States v. High, 997 F.3d 181, 188–89 (4th Cir. 2021)). Additionally, a court, in considering a reduction in sentence pursuant to section 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States

---

[2] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A).

As recently amended, United States Sentencing Guideline section 1B1.13(a) essentially reiterates the requirements of section 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(a)(2); see also Beck, 425 F. Supp. 3d at 578.  Section 1B1.13(b) then provides a non-exhaustive list of examples of extraordinary and compelling reasons to grant a compassionate release.  The four enumerated reasons are (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and (4) defendant as a victim of abuse.  U.S.S.G. § 1B1.13(b).  Section 1B1.13(b)(5) then provides a catch-all for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  Section 1B1.13(b)(6) also provides that a court may consider a change in the law when determining "whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."  Finally, section 1B1.13(d) states that rehabilitation of the defendant is not alone an extraordinary

5

and compelling reason, but it may be considered along with other circumstances.

Courts maintain broad discretion in the evidence they may consider on a motion to reduce a sentence under the First Step Act. Concepcion v. United States, 597 U.S. 481, 498–502 (2022). However, courts do not have unfettered jurisdiction or discretion to modify criminal sentences. See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (internal quotation omitted). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute, such as 18 U.S.C. § 3582(c), expressly permits it to do so. Id. Even then, section 3582(c) is appropriately invoked only in unusual cases, or, as the Fourth Circuit phrases it, the "most grievous cases." United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020). It is not a vehicle for repeated reconsideration of sentences as a way to circumvent the general rule of finality. See Goodwyn, 596 F.3d at 235-36. Nor is it a vehicle to collaterally attack a federal conviction or sentence. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022).

The Government has waived the exhaustion requirement. (Doc. 231 at 5 n.1 (noting that "[t]he exhaustion requirement may be waived in certain circumstances, including cases such as this where the petitioner is not yet at a BOP facility and thus unable to

6

exhaust his administrative remedies")(emphasis added) (citation omitted).) The court thus turns to the merits.

McClam first argues that he fears he will be harmed in federal prison, claiming there is "a bounty" on his head. (Doc. 225 at 5.) Although the court is sensitive to McClam's anxiety, a defendant's speculative belief that he may be harmed by fellow inmates is not an extraordinary or compelling reason that justifies compassionate release. See United States v. Tate, No.3:16-cr-74, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022) (inmate's reasonable fear of assault by other inmates was a not an extraordinary and compelling reason for release); United States v. McDuffie, No. 4:20-CR-00099, 2024 WL 1451096, at *2-3 (E.D.N.C. Apr. 3, 2024) (reasonable fear of assault by other inmates was not an extraordinary and compelling reason for release even though defendant claimed he was assaulted and threatened in the past); United States v. Reinhardt, No. 1:09-cr-00047-2, 2024 WL 3282455, at *3 (W.D.N.C. July 2, 2024) ("Defendant's fears for his safety do not warrant compassionate release in this case, particularly given that Defendant has provided no evidence regarding any particular threats that would reasonably cause him to fear for his safety."). Here, McClam has not demonstrated that his stated fear of assault rises to the level of an extraordinary and compelling reason for purposes of compassionate release. 18 U.S.C. § 3582(c)(1)(A).

7

McClam also argues that he should be released so that he may care for his mother and son. For a defendant's desire to care for a family member to qualify as an extraordinary and compelling reason justifying release, the defendant must demonstrate that he is the only caregiver available. See United States v. James, No. 1:09-CR-190-3, 2024 WL 2846418, at *2 (M.D.N.C. June 5, 2024) (citing U.S.S.G. § 1B1.13(b)(2)(C)). McClam has not made that showing. To the contrary, McClam's son's maternal grandmother is caring for the child now, and McClam has two maternal half-siblings who live in the same city as his mother who can care for her.[3] McClam has not alleged that his siblings are unable to do so. Accordingly, while McClam's desire to care for his child and mother is admirable, he has failed to make the required "robust evidentiary showing" that he is the sole caretaker available for these family members. United States v. Richardson, No. 5:18-CR-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020). Thus, he has failed to establish an extraordinary and compelling reason that justifies compassionate release.

The court also previously considered many of the circumstances McClam contends warrant compassionate release. (Doc. 219 at 6, 9-11.) For instance, McClam previously informed the court that the mother of his young son had recently passed

---

[3] McClam actually has four siblings, but one is incarcerated and the other lives elsewhere.

8

away before he was sentenced to 60 months' imprisonment for violating the terms of his supervised release. (Id. at 6.) McClam also told the court that the child's maternal grandmother was caring for the child. (Id. at 11.) The court considered McClam's desire to care for his son when fashioning McClam's sentence. This is relevant for two reasons. First, it means that this is not an intervening change in circumstances that occurred after sentencing and justifies compassionate release. Second, even if this were an intervening circumstance, it appears that the child has a suitable alternative caregiver, and so McClam's desire to care for his child does not outweigh this court's estimation of the § 3553(a) factors.

Although the death of a defendant's child's primary caregiver can constitute an extraordinary and compelling reason that justifies compassionate release in some circumstances, those circumstances are not present here. In United States v. Centeno-Morales, 90 F.4th 274 (4th Cir. 2024), the court and parties acknowledged that the death of the primary caregiver for the defendant's minor child could qualify as an extraordinary and compelling reason that may justify compassionate release. Id. at 278–80; see also U.S.S.G. §1B1.13(b)(3)(A) (identifying "death or incapacitation of the caregiver of the defendant's minor child" as an extraordinary and compelling reason). Nevertheless, the district court declined to grant compassionate release after considering the § 3553(a) factors. Centeno-Morales, 90 F.4th at

9

280. Noting that Centeno-Morales did not assert that "no other party was available and suitable" to care for the child, the Fourth Circuit affirmed the district court's decision. Id. at 281.

McClam's arguments are less appealing than those advanced in Centeno-Morales. As noted, the death of McClam's son's mother is not an intervening change in circumstances that occurred after sentencing. The court was aware of his child's mother's passing before it imposed McClam's sentence and considered it appropriately in its judgment. And even if McClam's son's mother was his primary caretaker, which McClam has not established, it appears that the child's maternal grandmother is an available and suitable caregiver for the child.

McClam also argues that his rehabilitation constitutes an extraordinary and compelling reason for compassionate release. McClam's rehabilitative efforts are to be commended. But section 1B1.13 states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" warranting compassionate release. U.S.S.G. § 1B1.13(d). McClam has received his CDL license, taken classes, and vows that he will not reengage in criminal conduct. Each of these actions are positive developments, but they do not qualify as an extraordinary and compelling reason that warrants compassionate release, even considered in tandem with his other grounds for compassionate release. See, e.g., United States v. Degante, No. 4:17-CR-00075,

10

2022 WL 2813716, at *4 (E.D. Tex. July 18, 2022) (denying motion because a defendant's "[r]ehabilitation alone cannot support a claim for sentence reduction").

None of McClam's arguments – alone or in combination - amounts to an extraordinary and compelling reason for compassion release. But even if extraordinary and compelling reasons existed, early release would not be appropriate in this case in light of the section 3553(a) factors.

Section 3553(a) requires a court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Importantly, the "text of § 3553(a) does not make any factor, or combination of factors, dispositive." United States v. Kibble, 992 F.3d 326, 334-35 (4th Cir. 2021) (Gregory, C.J., concurring). Thus, the court must consider —

   (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)  the need for the sentence imposed –

      (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)  to afford adequate deterrence to criminal conduct;

      (C)  to protect the public from further crimes of the defendant; and

      (D)  to provide the defendant with needed educational or vocational training, medical

11

>                    care, or other correctional treatment in the
>                    most effective manner;
>
>     (3) the kinds of sentences available;
>
>     (4) the kinds of sentence[s] and the sentencing range
>         established for [the applicable offense category as
>         set forth in the guidelines] . . .;
>
>     (5) any pertinent policy statement . . . by the
>         Sentencing Commission . . .;
>
>     (6) the need to avoid unwarranted sentence disparities
>         among defendants with similar records who have been
>         found guilty of similar conduct; and
>
>     (7) the need to provide restitution to any victims of
>         the offense.

18 U.S.C. § 3553(a).

Granting McClam's motion for compassionate release would fail to adequately reflect the seriousness of the offense of conviction, his criminal history, the need for deterrence, and the need for the sentence to promote respect for the law. McClam is a career offender who has been repeatedly convicted of possessing and distributing drugs. (Doc. 189 ¶¶ 31, 35-38, 42.) Some of his prior offenses were violent or involved a firearm. (Id. ¶¶ 29, 34). And perhaps most relevant here, McClam returned to the drug trade while on supervised release after serving a lengthy sentence for substantially similar conduct. (Doc. 191 at 1-2.) He also possessed a firearm during his drug trafficking, which heightened the risk of his already dangerous conduct. (Id. at 1.) McClam's substantial and recurring involvement in drug trafficking

12

demonstrates his disregard for the law and the need for a sentence that protects the public from further criminal conduct. Given McClam's history of re-offending, the court is unconvinced that compassionate release, even under the conditions ("house arrest") he proposes, would deter future criminal conduct, safeguard the public, and promote respect for the law. (Doc. 225 at 3.)

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that McClam's motion for compassionate release (Doc. 225) is DENIED.

                                      /s/   Thomas D. Schroeder
                                   United States District Judge

January 2, 2025